IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:20-CV-00472-M

| | |
|---|---|
| MID ATLANTIC RESTAURANT CORP., *a North Carolina corporation*, <br><br> Plaintiff and Counter Defendant, <br><br> v. <br><br> GUMBY 1105, INC., *a North Carolina corporation*, and J. DAVID HARRIS, *an individual*, <br><br> Defendants, Third-Party Plaintiffs, and Counter Claimants, <br><br> v. <br><br> CARY KEISLER, INC., *a North Carolina corporation*; S.C.N.B. REAL ESTATE SERVICES, LLC, *a North Carolina limited liability company*; GREGORY MOORE, *an individual*; JUNIUS MOORE, *an individual*, and JOHN DOES 1-10, <br><br> Third-Party Defendants. | **OPINION AND ORDER** |

This order addresses three separate motions currently before the court: Plaintiff Mid Atlantic Restaurant Corporation's ("Plaintiff") Motion for Preliminary Injunction [DE-4], Defendants/Third-Party Plaintiffs Gumby 1105, Inc. and J. David Harris' ("Defendants") Renewed Motion for Preliminary Injunction [DE-47], and Third-Party Defendant S.C.N.B. Real Estate Services, LLC's ("S.C.N.B.") Motion to Compel Arbitration [DE-54]. For the reasons discussed below, both motions for preliminary injunction will be denied and the motion to compel arbitration will be granted.

I. Abbreviated Factual and Procedural History

This litigation stems from a personal friendship and business relationship gone sour. Plaintiff is the franchisor of Smithfield's Chicken 'N Bar-B-Q franchise system and filed suit to effectuate the termination of a franchise agreement with one of its franchisees, Defendants. Plaintiff alleges that Defendants are in breach of the agreement due to their failure to maintain an approved lease for the site of the restaurant, which is an express term of the agreement. Though notice of termination was sent to Defendants, Defendants continue to operate a restaurant in Jacksonville, North Carolina, using the Plaintiff's franchise name and trademarks and Defendants have also failed to return Plaintiff's proprietary information. Defendants filed counterclaims and impleaded several third-party defendants alleging an organized scheme, by Gregory Moore and the various entities he operates and controls, to prevent Defendants from securing an approved lease, all in an effort to permanently force Defendants out of business.

Plaintiff filed suit against Defendants on September 2, 2020, alleging breach of contract, trademark infringement, unfair competition, and trade dress infringement [DE-1]. Defendants counterclaimed and impleaded multiple third-party defendants: Cary Keisler, Incorporated ("Cary Keisler") is Plaintiff's management company; S.C.N.B. is the owner and lessor of the commercial property in Jacksonville where Defendants operate their franchise; Gregory Moore is Plaintiff's and Cary Keisler's sole shareholder and S.C.N.B.'s sole member; Junius Moore is the son of Gregory Moore and involved in his father's business dealings; and finally John Does one through ten were named as third-party defendants [DE-42]. Defendants causes of action include specific performance, breach of contract, breach of the duty to negotiate in good faith, breach of the implied covenant of good faith and fair dealing, declaratory judgment, civil conspiracy, unfair and deceptive trade practices, and tortious interference with contract.

2

Throughout the fall of 2020 the parties were engaged in active motions practice. An early mediated settlement conference held on February 10, 2021, resulted in an impasse [DE-75]. There are currently seven fully briefed motions before the court. The court held a telephonic status conference with the parties on June 9, 2021 [DE-81] at which time the court directed the parties to meet and confer and file a joint status report proposing a course of action for addressing outstanding motions. The parties filed a joint status report on July 8, 2021 [DE-86] proposing different approaches. The court considered the parties positions and set the cross motions for preliminary injunction for hearing via court order on July 14, 2021 [DE-87] which was subsequently postponed to August 12, 2021 [DE-93], pursuant to the parties' consent motion [DE-90]. Due to a medical issue impacting one of the participants, the August 12th hearing was vacated, and the court determined that oral argument would not aid in its decisional process [DE-95]. The court will first address the cross motions for preliminary injunction followed by S.C.N.B.'s motion to compel arbitration of the Defendants' seventh cause of action alleging S.C.N.B. breached the renewal clause of the lease agreement between the parties.

II. Cross Motions for Preliminary Injunction [DE-4, DE-47]

a. Legal Standard

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). Generally, preliminary injunctions are designed to preserve the status quo and prevent irreparable harm during the pendency of litigation. *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 375 (D. Md. 2019). To prevail, a movant must demonstrate: (1) their suit's likelihood of success on the merits, (2) irreparable harm in the absence

of the requested relief, (3) that the balance of equities tip in their favor, and finally (4) that issuing the requested preliminary relief is in the public interest. *Id.* at 376 (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The movant must establish all four elements in order to prevail. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). Preliminary injunctions are governed by Federal Rule of Civil Procedure 65, which does not require an evidentiary hearing so long as the non-moving party has a fair opportunity to oppose the injunction and the motion does not turn on a disputed factual issue. *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 466-67 (D.S.C. 2020); *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015).

"Trademark law serves the important functions of protecting product identification, providing consumer information, and encouraging the production of quality goods and services." *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005). To prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake. 15 U.S.C. § 1114(1). Plaintiffs who then seek a preliminary injunction are entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits for a trademark violation. 15 U.S.C. § 1116(a).

Trademark infringement cases can involve unrelated parties. For example in *IHOP Corp. v. Langley*, this court issued a temporary restraining order in favor of Plaintiff International House of Pancakes Corporation against a man who tried to confuse the public into thinking his restaurant, "It's Hop'n," was an IHOP franchise. No. 5:08-CV-168-BO, 2008 WL 1859340, at *2 (E.D.N.C. Apr. 11, 2008). Among other things, the man had bought a vacant building that was once occupied by an IHOP franchise and subsequently painted the roof a shade of blue similar to the color

4

contained in IHOP's trade dress. *Id.* Often it is a contract between two related parties that authorizes the use of intellectual property, including trademarks. In *McHenry Software, Inc. v. ARAS 360 Techs., Inc.*, this court issued a preliminary injunction in favor of a trademark holder where the defendant acknowledged the proper termination of a contract that governed the use of the trademark source code and did not argue that it should be allowed to continue use of the intellectual property. No. 5:12-CV-277-BO, 2012 WL 13027554, at *2-3 (E.D.N.C. Nov. 1, 2012).

In the franchisor-franchisee context, it is a contract—the franchise agreement—that authorizes the use of trademarks. Courts have found "that the Lanham Act's requirement that a franchisor demonstrate that *unauthorized* trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308-09 (11th Cir. 1998) (detailing how the franchisee's numerous failures to conform to McDonald's quality, safety, cleanliness, and food-safety standards constituted a material breach of the agreement sufficient to justify termination and thus support the contention that the continued use of trademarks was unauthorized); *see also S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375-78 (3d Cir. 1992) (finding that (1) the franchise agreement was properly terminated after the franchisee failed to make royalty payments or cure the defect within sixty days of notice and (2) remanding to the district court with instruction to grant the franchisor's request for preliminary injunction because the post-termination use of trademark by the franchisee was unauthorized despite the franchisee's independent claim of breach of the franchise agreement).

5

Case 5:20-cv-00472-M   Document 96   Filed 08/19/21   Page 5 of 11

b. Discussion

Though the underlying legal claims in this matter are varied, they center on trademark infringement. In its motion, Plaintiff seeks to bar Defendants from the continued use of its trademarks, compel the return of its proprietary information, and prevent Defendants from the continued operation of the franchise in contravention of the properly terminated franchise agreement. Defendants, on the other hand, seek to prevent the termination of the franchise agreement, which they argue was improper, the forced closing of the franchise location in Jacksonville, and want to continue their use of Plaintiff's trademarks during pendency of this litigation. Defendants argue that this will properly preserve the status quo because from the date the lease formally expired in April 2019, the restaurant has been fully operational. Defendants allege that since April 2019, Plaintiff has accepted royalty payments and S.C.N.B. rent, despite the lack of a lease agreement.[1] The court finds that neither moving party has passed the first hurdle of demonstrating a likelihood of success on the merits of their respective suits therefore it is unnecessary for the court to hold an evidentiary hearing and both motions must be denied.

For Plaintiff to demonstrate that unauthorized trademark use occurred it must establish that its termination of the franchise agreement, which authorized the use of the trademarks in the first instance, was proper. Here, the basis for the termination was Defendants' failure to maintain an approved lease for the site of the restaurant, an express term of the franchise agreement. Defendants argue that their failure to maintain an approved lease is due to S.N.C.B.'s violation of the renewal clause of the lease agreement. This is not a case of unrelated parties or simply a franchisor-franchisee dispute. Here, the Plaintiff-franchisor is also the lessor, S.N.C.B.,

---

[1] At a status conference held before the court in June [DE-81], counsel for Plaintiff and Third-Party Defendants confirmed that the payments are being made however noted that the checks are not being cashed. This is not material to the court's decision.

6

purportedly holding up the lease renegotiation process that in turn serves as the basis for the franchisor's termination of the franchise agreement. Because, as will be explained below, the lease dispute is subject to mandatory arbitration, this court cannot at this stage determine whether or not termination of the franchise agreement was proper and thus cannot find a likelihood of success on Plaintiff's trademark infringement or other related claims, nor can it find a likelihood of success on Defendants' counterclaims and third-party claims. In Defendants' own words, the "breach of the Lease is inextricably intertwined with the parties' respective claims and counterclaims in this litigation." DE-64 ¶ 15. The court could not agree more. Furthermore, while the court is cognizant of the fact that in typical trademark infringement cases irreparable harm is presumed, here there have been no allegations that the quality, service, or food being provided by Defendants are not in line with Plaintiff's standards. Without such an allegation, any potential harm can be addressed by monetary damages.

   III.  Motion to Compel Arbitration [DE-54]
      a. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, embodies the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and allows parties to agree to arbitrate as an effective and cost-efficient means to resolve disputes. The FAA outlines two parallel devices for enforcing an arbitration agreement: a stay of the litigation in Section 3 and an affirmative order to engage in arbitration in Section 4. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (citing *Moses H. Cone*, 460 U.S. at 22). The FAA requires a district court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration" once a party to the arbitration agreement moves the court for a stay.

9 U.S.C. § 3. Where there are non-arbitrable claims, "the decision to stay the litigation . . . is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996).

But it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (FAA "places arbitration agreements on equal footing with all other contracts"). Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The burden lies on the movant to demonstrate, inter alia, "a written agreement that includes an arbitration provision which purports to cover the dispute[.]" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (quotation marks and citation omitted). In reviewing a motion to compel arbitration, a district court may consider materials outside the pleadings, including the purported written agreement to arbitrate itself, to determine whether the parties agreed to arbitrate. *See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) ("[T]he court is entitled to consider materials other than the complaint and its supporting documents."). Federal courts apply ordinary state-law principles governing the formation of contracts in reviewing motions to compel arbitration. *Id.* at 236; *see also Root v. Robinson*, No. 5:20-cv-00239-M, 2021 WL 102187, at *3-5 (E.D.N.C. Jan. 12, 2021) (applying North Carolina's law of contract to analyze arbitrability).

Under the FAA, "[a] litigant may waive its right to [arbitration] by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985); *see also* 9 U.S.C.

8

§ 3 (providing that a party with an arbitrable claim may apply for a stay of the trial of that action if "the applicant for the stay is not in default in proceeding with such arbitration"). Because of the strong federal policy favoring arbitration, however, courts do not not lightly infer the circumstances constituting waiver. *Maxum Founds.*, 779 F.2d at 981. The key inquiry is whether the party opposing the stay has suffered any actual prejudice. *Id.* at 982. Although "mere delay, without more, will not suffice to constitute waiver," *id.*, "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice," *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). The party opposing the stay bears the heavy burden of proving waiver. *Am. Recovery*, 96 F.3d at 95.

   b. Discussion

Though there is no reference to the FAA, the court construes Third-Party Defendant S.C.N.B.'s motion as being made pursuant to Section 4. S.C.N.B. proceeds to demonstrate why North Carolina state law dictates that the parties had a valid agreement to arbitrate all disputes, except those arising from the failure to timely pay rent, according to a provision in the lease agreement. DE-55 at 4-5. In opposition, Defendants do not challenge the veracity of the arbitration provision quoted in S.C.N.B.'s memorandum nor the validity of the agreement to arbitrate. Instead, they invoke the argument of waiver to preclude arbitration pursuant to Section 3. DE-64 at 6-11. Based on the briefs and a review of the pertinent lease agreement, attached as an exhibit to Defendant's Amended Verified Counterclaims and Third-Party Complaint [DE-42-16 ¶ 21], the court finds that S.C.N.B. has met its burden of demonstrating that the lease agreement between it and Defendants included an arbitration provision which purports to cover the renewal-clause dispute. The court will focus its attention to Defendants' waiver argument.

As noted, delay in seeking arbitration is a factor to be considered when assessing whether a waiver occurred. Here, S.C.N.B's delay in seeking arbitration was so brief as to be insignificant and therefore weighs against a finding of waiver. The first iteration of S.C.N.B.'s motion to compel arbitration was filed approximately one month after Defendants filed their Answer and Third-Party Complaint. *Compare* DE-11 *with* DE-31. The current motion was filed two weeks after Defendants filed their Amended Verified Counterclaims and Third-Party Complaint. *Compare* DE-42 *with* DE-54. Regarding the extent of the movant's trial related activity, this factor also weighs against a finding of waiver. Though the court understands that Plaintiff and S.C.N.B. may be run and operated by the same individuals, they remain distinct, legal entities. The Defendants did not reference, nor could the court find, caselaw addressing this idiosyncrasy in the context of an arbitration waiver. Furthermore, the Fourth Circuit has found that a district court erred when it relied on both factually and legally distinct claims *initiated by the same legal entity* to support a finding that that party waived its right to arbitrate an unrelated claim. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001) (determining that employer's trade-secret claims in state court did not constitute a waiver of binding arbitration related to an employment dispute). The court finds that Plaintiff's initiation of this suit to seek relief for alleged breach of contract, trademark infringement, unfair competition, and trade dress infringement does not waive S.C.N.B.'s right to have the dispute regarding its lease with Defendants settled via arbitration pursuant to the express terms of the lease.

As for prejudice, Defendants focus on the extensive cost that would result from being forced to litigate the same issue in two separate forums. DE-64 at 11. By Defendants own admission, "[S.C.N.B.]'s breach of the Lease is inextricably intertwined with the parties' respective claims and counterclaims in this litigation." DE-64 ¶ 15; *see also id.* at 9 ("[T]he issue

10

of whether [S.C.N.B.] breached its obligations under the Lease are inextricably intertwined with the very issues that Mid-Atlantic has submitted to this Court for adjudication."). The court agrees. To avoid additional litigation expense to Defendants and promote judicial economy, the court, in its discretion, will stay these proceedings pending the outcome of arbitration.

IV. Conclusion

For the reasons discussed above, Plaintiff's Motion for Preliminary Injunction [DE-4] is DENIED, Defendants' Renewed Motion for Preliminary Injunction [DE-47] is DENIED, and S.C.N.B.'s Motion to Compel Arbitration [DE-54] is GRANTED. In the interest of judicial economy and in the court's broad discretion to manage its docket, this matter is STAYED pending arbitration of the lease dispute. Therefore, Plaintiff and Third-Party Defendants' Motion to Dismiss the Amended Verified Counterclaims and Third-Party Complaint [DE-56] is HELD IN ABEYANCE. Defendants and S.C.N.B. SHALL jointly submit to the court a status report regarding the arbitration proceedings no later than 90 days from the filing of this order, and every 90 days thereafter until the arbitration proceedings are concluded or settlement reached so that this court can take whatever further action may be appropriate at that time. Certain other motions on the docket—Defendants' Motion for Preliminary Injunction [DE-19], Plaintiff and Third-Party Defendants' Motion to Dismiss [DE-29], and S.C.N.B.'s Motion to Compel Arbitration [DE-31]—appear to relate to pleadings that are no longer operative and will therefore be DENIED AS MOOT.

SO ORDERED this 19th day of August, 2021.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

11